BEA, Circuit Judge,
dissenting:
I respectfully dissent. Yanko Hritsov Dimitrov petitions for review of the Board of Immigration Appeals’ (“BIA”) decision denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Dimitrov claimed before the BIA that he was a Bulgarian Gypsy, even though he spoke no Romani, did not have a Gypsy name, and appeared to know little about Gypsy culture. The BIA found Dimitrov’s testimony he was a Gypsy was “implausible,” and, on the basis of this adverse credibility finding, denied his applications for relief.
Contrary to the majority’s assertion, the BIA’s adverse credibility finding went to the heart of Dimitrov’s claims. See Desta v. Ashcroft, 365 F.3d 741, 745 (9th Cir.2004) (holding that when an immigration judge (“U”) denies asylum based “on an adverse credibility determination, he must provide specific, cogent reasons to support his determination ... [which] cannot be peripheral, but rather must go to the heart of petitioner’s claim”). Even if Dimitrov could prevail by claiming his persecutors perceived him to be a Gypsy, that was not his claim before the BIA. Dimitrov claimed he was entitled to asylum because he was, in fact, a Gypsy. If the BIA disbelieved him about his claim he was a Gypsy, and this disbelief is supported by substantial evidence, the BIA was also entitled to disbelieve the remainder of Dimitrov’s testimony, including his testimony he was persecuted by Bulgarian police because they perceived him to be a Gypsy. See Wang v. INS, 352 F.3d 1250, 1259 (9th Cir.2003) (“[W]hether we have rejected some of an [BIA]’s grounds for an adverse credibility finding is irrelevant. So long as one of the identified grounds is supported by substantial evidence and goes to the heart of [the petitioner’s] claim of persecution, we are bound to accept the [BIA]’s adverse credibility finding.”). Even were we to credit evidence in the record showing Dimitrov was assaulted by police in Bulgaria, without Dimitrov’s testimony, there is no basis to conclude Dimitrov was assaulted “on account of’ the Bulgarian police’s perception Dimitrov was Gypsy. With respect, the majority errs in saying “Nothing impugned Dimitrov’s story he was beaten by police who characterized him as a Gypsy.” Supra at 2. Dimitrov’s false story he was a Gypsy impugned it. One can believe Dimitrov’s story only if one believes Dimitrov; if Dimitrov is a liar *204 about being a Gypsy, the BIA can disbelieve the rest of his testimony. It is that simple.
The BIA’s conclusion that Dimitrov’s testimony he was a Gypsy was implausible is supported by substantial evidence and is not mere “speculation” or “conjecture.” See Jibril v. Gonzales, 423 F.3d 1129, 1135 (9th Cir.2005) (“Under our case law, testimony that is implausible in light of background evidence can support an adverse credibility finding---- However, when an IJ finds a petitioner’s testimony implausible based solely on ‘conjecture and speculation’ that testimony ... should not automatically be accorded deference.”) (internal quotation marks omitted). Dimitrov averred he grew up in a Gypsy neighborhood, played only with other Gypsy children because he was afraid to leave the Gypsy community, and that he served in a special Gypsy-only unit of the Bulgarian military. Yet he testified at the hearing that he spoke no Romani. The critical question, then, is whether it was reasonable for the BIA to conclude, on the basis of the record before it, that a true Gypsy, raised in a Gypsy community, would speak Romani. With respect, the majority errs when it states: “Like many European Gypsies, [Dimitrov] did not speak Roma.” Supra at 3. The majority does not favor us with the source of its insight about what many European Gypsies do or do not speak. But, it was not mere speculation for the IJ to conclude that a Gypsy who grew up in a Gypsy neighborhood in Bulgaria would speak Romani. The record before the BIA included a State Department country report on Bulgaria. U.S. Department of State, Country Reports on Human Rights Practices — 2003, Bulgaria (February 25, 2004). [ER 233] This report stated both that Gypsy children entering Bulgarian schools were not proficient in Bulgarian and that, in an effort to integrate Gypsies into the Bulgarian police forces, the Bulgarian police introduced bilingual training manuals. Id. at 10, 12. Both of these facts suggest that a Bulgarian Gypsy would most probably speak Romani. And from this, the BIA could conclude that it was implausible that a true Gypsy, who grew up in a Gypsy neighborhood, as Dimitrov did, would not speak Romani.
Dimitrov’s evidence to the contrary does not support his contention that a Gypsy in Bulgaria would not be likely to speak Romani. At most, it shows that many Gypsies are now bilingual. In any event, this evidence was introduced for the first time in an untimely motion to reopen. Because the untimely filing of this motion is not excusable, we lack jurisdiction to consider it. See Ekimian v. INS, 303 F.3d 1153 (9th Cir.2002).